The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armond presiding. Good morning, counsel. Our next case is 4-22-0859, Katelyn S. v. Corbin B. Could counsel for the appellant please state your name for the record? Yes, Your Honor. My name is Leslie Wood for Corbin B. the appellant. Thank you. And counsel for the appellate, could you please state your name for the record? Yes, Sean Reese. All right. Thank you. Ms. Wood, you may proceed. Thank you, Your Honor. Good morning to the panel. My name is Leslie Wood, and I am here today representing the appellant Corbin Burford, who is the father of the minor child at issue, who I will refer to as RS. She's 10 years old. The appeal is brought pursuant to Illinois Supreme Court Rule 303 from a final judgment in Macoupin County Circuit Court rendered August 16, 2022. On behalf of the appellant Corbin B., I intend to present you with three reasons to reverse and remand this cause back to the trial court level. I'm also presenting you with a question of law and also a question of fact on behalf of the appellant. First, it is our contention and excuse me, I'm losing my voice. I apologize. It is our contention that the trial court did not have proper subject matter jurisdiction to enter an order modifying the allocation of parental decision making and thereby stripping Corbin B. of his equal decision making responsibilities that had been ordered previously in the trial court. The trial court granted relief not requested by either party in their pleadings that were before the court at the time of trial. Second, it is our position that the trial court's decision to deny equal parenting time and to remove equal decision making was against the manifest weight of the evidence presented at trial, was contrary to the recommendation, the multiple recommendations of the guardian ad litem, I.M. Ian Murphy, and against the best interest of the minor child, R.S. The decision rewarded the child's mother, Kaitlin S., for her demonstrated unwillingness to co-parent with the father, Corbin B. Third, the ruling to modify the right of first refusal from two hours to a 10-hour time window was against the manifest weight of the evidence presented against the G.A.L. recommendation, which was to remove the right of first refusal entirely, and that the 10-hour right of first refusal acts as an unreasonable restriction of Corbin B.'s parenting time because he works a 12-hour shift as a police officer and a member of the National Guard, whereas the mother, Kaitlin S., works 8-hour shifts in health care. I would like to point out to this court that I was not the trial attorney for Corbin B. in this matter, and to let the court know that I have not been able to speak to the trial attorney or review the client file. My review of the record and transcript show that there were only three witnesses at trial whose testimony was helpful or meaningful to the court, that being Corbin B., Kaitlin S., and the G.A.L. Ian Murphy. Good morning, counsel. Yes, ma'am. May I interrupt you? I wanted to get through your introductory remarks. To your first point with regard to subject matter jurisdiction, you rely in your brief on three cases, Ayala, Fox, and Otwell. But in each of those cases, the trial court sua sponte addressed an issue without prior notice to the parties. Here, we have a different situation. The parties did both request rulings regarding decision-making responsibilities, certainly in their closing arguments. So the trial court did not address that issue without notice or sua sponte. I mean, it's clear that the common law record has the written closing arguments at 302 to 304 and 317 to 322. And certainly within those arguments, there is argument with regard to decision-making responsibilities. So I'm not sure how these cases support your point of jurisdiction here. Your Honor, if I could address that. A review of the transcript will show on transcript page five and six. The court asked the parties, are we here to modify, I'm paraphrasing and I apologize, are we here to modify the parenting plan? And the parties said yes. There was no specific question about what part of the parenting plan the parties were there to modify. The court did not parse out whether or not they were there to modify decision-making or parenting time. And if you review the pleadings that both parties filed prior to it, you actually have to go all the way back to the mother's initial pleading that she filed 9-6 of 2019, which is referred to in the appendix at 8-16. And you will find that her pro se motion at that time basically stated the only reason for a significant change in circumstances was a father didn't give adequate notice of his permanent change of residence. We know, counsel, that parenting plan that was being reviewed did have material with regard to decision-making responsibility, correct? The parenting plan that was, all parenting plans include both. I'm not sure if I understood your question, Judge. Well, it was in there. And so, are you saying that the closing arguments that were presented to the court shouldn't have had that material regarding decision-making responsibility and what the parties wanted respectively with regard, wanted to do with respect to that? Your Honor, my client never changed his position. He had equal parenting and he argued for equal parenting, or excuse me, decision-making, and he argued for equal decision-making. There was no notice prior to trial that decision-making was going to be modified. In fact, if you look, the last GAL report was only nine days before trial. There were no pleadings. And in Ayala and Fox and Antwell and all of the progeny from those cases indicate that the pleadings must conform to the proofs and vice versa. In this instance, if you review the pleadings, us being a notice pleading state, there's nothing in any of the pleadings from either party that talks about that. Yes, I do admit. So you're saying, so they had no notice? I do not believe that my client. No, the answer is no. There was testimony regarding decision-making responsibility at the July 27th hearing, was there not? There was testimony regarding the inability of the parents to communicate. And I would submit to the court that the inability of the parents to communicate was being presented as evidence that equal parenting time was not going to be tenable. 50-50 parenting time, which was Caitlin S.'s argument that 50-50 parenting time was not in the best interest of the child. Dad was simply testifying at trial about communications between the parties to demonstrate to the court that he was not being taken into consideration. And the times that the mom was taking the child to the doctor, this or that, and he was showing the court that the decisions that were being made unilaterally by mom were not in the child's best interest. But I don't think that that was being presented in his attempt to modify the equal parenting time that existed. It was testimony given by both parties about their inability to communicate, which was consistent with an argument that Caitlin S. was making for not having 50-50. But at no time was my client on notice that his equal parenting time was at risk at the time that he went to trial. Caitlin didn't ask for the equal parenting to be removed, and the GAL didn't recommend that the equal parenting be removed. And certainly Corbin V. did not ask for the equal parenting time to be removed. Counsel, am I mistaken? I thought he asked to vacate the parenting agreement. No, he did not, Your Honor. Caitlin S. asked to vacate the March 4th parenting agreement. The timeline of this case, Judge, and I'm not trying to argue with you. The timeline of this case is basically there was an initial GAL that made a report back in 2019, November 7th of 2019. GAL Kevin Polo makes a recommendation for shared decision-making and gave specific parenting time to Corbin V. March 4th of 2020, without a hearing, the Macoupin County Court enters an order taking up Kevin Polo's recommendation as its order. Then on March 31st of 2020, Mother, Caitlin S., files a motion to reconsider or vacate the March 4th 2020 order. I don't mean to interrupt you, but here's the reason I asked, and I agree. I think, well, obviously, you know the record better, and I think she was the one who wanted to vacate it. But why I ask is because when the hearing begins, the trial court points out that it seems kind of confusing because there's been a lot of activity. It says, and we don't know for sure what exactly is going on here. I just want to make sure that we get clarified before we hear testimony. And then there's the representation by Mr. Reese that they wanted to vacate the parenting agreement earlier. But then the testimony begins with your client, and it looks like from that point on, both parties start addressing the parenting agreement. So I'm trying to figure out how, if you're saying nobody seemed to know this was going to happen, how is it then that they were all prepared to testify about? I mean, I can tell you, Judge, that I interpreted the testimony that happened throughout the transcript as being evidence of cooperation and communication that would be consistent with arguments regarding parenting time. I do understand what you're saying, which is that you're saying that they're talking about their inability to cooperate, but that was basically testimony that's consistent with both parenting time and decision making. But in this instance, because there are no pleadings on file prior to trial regarding a change of parental decision making, that the testimony should be looked at in light of changing parenting time and not decision making. If the proofs at trial are not consistent with the pleadings, then the proofs at trial have to be consistent with the pleadings. That's what Ayala and Fox and Otwell are about, and go all the way back to the case I cited from 1931. Your proofs have to comport with your pleadings. And in this case, if you review the pleadings, Your Honor, there are no pleadings that mention terminating equal parenting, parental decision making. And in fact, there's no pleadings on file that ask for that. So after the order was entered, was there a motion then filed? So the convoluted, unfortunate events that happened were that on August 16th, it's not convoluted, I apologize. On August 16th of 2022, the order was entered. The attorney for Corbin B. at that time did not file a motion, a post-trial motion, until the date passed. And then when the date passed, I filed two things on behalf of my client, this appeal and also a motion to reconsider. The trial court has entered an order stating that because this issue, this case is on appeal, the court did not rule on the motion to reconsider. Was that the question, Your Honor? Well, I guess it raises more questions, but I'll let them go. Okay, if there are questions I can answer, I'd be happy to, but Judge, I apologize. I can't give you insight into what happened with the trial attorney because she is not communicating with me. So therefore, I can't answer questions if you have any about what happened at trial or post-trial. Okay, I can't resist. I would love to speculate, but I don't think that's my place, Judge. Since you filed both motions, once the court indicated it wasn't going to address the one, why didn't you just wait to pursue your appeal and ask the trial court to enter a ruling to clarify its decision or to reconsider so you'd have a trial record on that exact issue? If you look, Judge, Mr. Reese and I filed a joint motion asking for the appeal to be stayed so that we could go forward with the motion to reconsider, and trial court in this court denied that motion. If there's another sort of remedy that I did not seek, I can only apologize. That was the remedy that Mr. Reese and I sought so that we could try and resolve the issue with Judge Deal in Macoupin County, but when the appeal was not stayed, the trial court refused to go forward. Since you filed the notice, you've taken jurisdiction away from the trial court, so what would have been the prejudice to simply dismissing the appeal and proceeding with the motion? Well, I consulted with my client, Judge, and this was the route that my client chose to take. See, you're the lawyer. You're the one that's got the law degree. Yes, Your Honor, that's correct, but I believe that at the time the appeal was ripe and I was uncomfortable with the idea of dismissing the appeal because of the timeline with Rule 311. I thought I counseled my client that it was best to go forward in this appeal. Okay, I apologize for taking up your time. Please go ahead. No, you're fine, Judge. I mean, I'm open to criticism, but ultimately I think it's my client's right to go forward with the appeal, and you can second-guess that right, but here we are. So I guess I would ask the court to consider. I'm not sure what the trial court could have cleared up. Certainly, it was very clear that the judge had what I guess I would say the trial court had seen these folks throughout the child's life, and the parties have returned to the trial court throughout the child's life. The 2019 motion to vacate was not rolled on until 2022, ultimately, and that was in concert with my client's petition to modify custody or, excuse me, parenting time. The reason for that was that my client had moved within one mile of Kaitlyn Essin, the child, and with that small amount of travel time, he had asked the court to grant him equal parenting time. The child goes to the same school as the half-siblings now that live in Corbin B.'s house. He is a police officer, and he works every other weekend, and that is one of the concerns that my client has and that I would ask this court to consider is the 10-hour right of first refusal. But that 10-hour on that point, counsel, it seems that the trial court was looking or meant to, by that 10-hour right of first refusal, prioritize R.S.'s spending time with her mother rather than her stepmother when Corbin had to work during his scheduled parenting time. Isn't that correct? Yes. Okay. And in light of the concerns that the GAL raised in at least one report, if not more, about R.S. feeling bullied by her stepsister and wanting to be with her stepmother only when both parents were working, why was this right of first refusal against the manifest way to the evidence? Because, Your Honor, it only works against one parent. It doesn't work against the other. And so it's basically punishing dad, but there's no recourse for dad when mom's working. Mom uses her family to watch the child when she's working, and the reciprocal arrangement does not work. So it's a one-sided right of first refusal. Well, if we look at this right of first refusal and how it was used, isn't this actually punishing the child, having the child get up early in the morning? Now, I know this relates to Caitlin, but to go home at 4.30 in the morning, isn't that how it operates between these two parents? And wasn't this indicative of their behavior during the course of this litigation? Your Honor, I find the case, it's a Rule 23, and I did cite it in my brief, and I do understand the limitations of Rule 23. But there was a phrase used in NRA MM that sort of resonates with me called time trumping. The GAL in that case calls it time trumping. And I think that the right of first refusal is problematic when it's weaponized by the parents and used to time trump, which is what's happening in this case. And it may have happened throughout the case, which is why one could anticipate that the GAL, by his last final report nine days before trial, recommended to get rid of the right of first refusal altogether. Because both of these parties weaponize it. And again, I'm in love with the phrase time trumping, and I think it applies in this case. And I do think that these parties use it against each other, regardless of whether they're spending equal time or not. Against each other to the detriment of the child. Of course. Right. Anything that's weaponized against each other is obviously going to negatively affect the best interest of the child. Right. So isn't that the reason or could not be the reason that the trial court did what it did with regard to granting the 10 hour right of first refusal, knowing the facts regarding the situation at Corbin's home with his wife and children, and certainly knowing what was going on with regard to the relationship of RS with her mother. I would point out to your honor that in the transcript when Caitlin essence testifying. She's asked why she proposed the 10 hour and she specifically says in her testimony that she does it to limit Corbin's time with the child. Under those circumstances, I think that the court should and recognize that this is an attempt by the mother, specifically to limit father's time, there's nothing in it about the best interest of the child she doesn't argue that she's doing it to protect her child she's saying it's to limit the time with the child. Under those circumstances, I don't think that the court can can reasonably continue to keep a 10 hour right of first refusal when the court knows that it's only being used against one person. And in fact when dad is off during the week, especially in the summer, he does not have the same ability, because to have the child in his care because mom works eight hours, and the right of first refusal doesn't kick in, so he will not get the child Mr. Your honor. You're on mute mysteries. Thank you justice. May it please the court and counsel is the police position that the trial court made a proper ruling on the allocation of parental responsibilities, including decision making responsibility and parenting time. The court had subject matter jurisdiction over this matter, because there was no question by the parties that it was in dispute. And additionally, courts ruling on the evidence presented on allocation of decision making and parenting time was not against the manifest weight of the evidence. Now regarding decision making responsibility on subject matter jurisdiction. Central to the case decided by the appellant is a notice issue. There was proper notice on the issue of decision making responsibility, because the parties had discussed it prior to and at the trial, notifying the court that the parenting plan would be modified and that there was no. The issue of change circumstances wasn't an issue that all parties agreed. The parenting plan needed to be modified. Did there have to be pleading counsel with regard to the decision making responsibility and we know there was no fleeting correct and reviewing the record there was no pleading on the issue of significant decision making only. However, there was discovery issued, which is on C 248 and C 250, and the certificate those are only the certificates of service, but the certificates of service from both parties indicate that there were interrogatories on the allocation of parental responsibility and parenting time. And the appellants discovery was interrogatories related to parental responsibility. The jail investigated these issues provided for in the decision making issues and his for supplemental report. There were the jail would not have known to do that. Otherwise, had there not been noticed to all parties on decision making. And there was quite a bit of testimony on questions about medical decision making health decision making education and religion. There was a lot of testimony and cross examination on both issues, specifically, or the doncha and the trouble that Miss you make was when trying to co parent with father, and getting nowhere on that issue. There was additional testimony on attending the appointments for these on the medical appointments, there was cross examination on why mother eventually stopped trying to communicate with father to coordinate appointment dates. But that was didn't see evidence really indicate that she excluded him from this process of significant decision making, such as abide by not giving him notice of the medical appointments. I disagree, Your Honor. She was giving him notice, and there was a portion of the transcript that talks about why she stopped giving him notice. And there was a text message exchange between the parties. And the father says something to the effect of statements don't require a response. Unless it's an emergency, you would get a response from me if this was an emergency otherwise statements don't require a response. And in that text message. It was the mother, trying to coordinate a date. I believe it was for orthodontia with father so that he could attend the appointment. But the fact of the matter is they weren't cooperating on anything, including haircuts. I mean, it doesn't a GL report include information that father wanted to have his whim, give, have her get her haircut from a different person at a different place a different time. So, wouldn't, I mean, how was it against the manifest weight of the evidence for the trial court to place decision making with your client was it. I'm sorry I don't know they understood the question. Okay. Given the fact that these parties didn't cooperate on anything regarding decision as quote insignificant, apparently, as haircuts, and who and when and where those should take place. How was that against the manifest weight of the evidence for the trial court to have awarded the decision making responsibility to your client. Was it against the manifest weight, or was this a decision that the trial court had sufficient evidence to make the trial court had sufficient evidence to make this ruling and provided express findings on the best interest factors related to that decision on these nine factors express factors that the court reviewed in order before making the ultimate ruling that decision making should be only to mother. And one of those factors was the GLs recommendation, but the court went beyond issues that the GL identified in his report and expressly provided why the court declined to follow the GLs recommendation. You want to come in for a minute on before we run out of time I know you still have some time but the right of first refusal. And do you agree with opposing counsel that father was deprived of his parenting time based on the court awarding the 10 hour right of first refusal. So, I believe the court made a proper ruling on the right of first refusal, and that father was not deprived parenting time this is time father would not have otherwise because father may be working or whatever the case may be. The appellant is trying to paint a picture that the right of first refusal only applies to the hours that parents work. There's numerous reasons a right of first refusal could be applied. It could be with health issues, it could be for a funeral wedding, having to go to a work conference. There's numerous ways it could kick in. If it was a 24 hour right of first refusal father would be complaining that it only affects him because he's in the Illinois National Guard, and would frequently or occasionally have to go attend those matters. When mother is not. Now, when she exercised when your client exercised her right of first refusal refusal. She insisted on pre dawn transfers at least over the weekend isn't that correct rather than allowing our best to sleep in for a few hours when her stepmother was at home. So, how does that. You know why doesn't this concern show that this 10 hour right of first refusal really was against the manifest way to the evidence when it was clear that it was used this way. I disagree that it was mother, requiring the child to be brought over at 430am, I believe the transcript also shows mother saying she had made those same suggestions, and it was father foreseeing those early exchanges. I believe both parties blamed the other throughout the trial on the right of first refusal. And then additionally, I think the main issue, and it's identified in the case that the appellant has cited was when you have parents that have high conflicts like these two, the right of first refusal needs to have a larger amount of time. The right of first refusal previously was for two hours, requiring frequent uses of it, whereas this 10 hour right of first refusal would require less. The appellants also argued the jail recommended no right of first refusal on, I believe it was page 54 or 154. When the jails asked that the trial. What is your opinion on the right of first refusal. The jail said I'm wary of it, and that it wasn't needed, especially because it's 5050 parenting time. So his answer on right of first refusal was on the premise that the parties have 5050 parenting time. There was no discussion on. If it wasn't 5050 parenting time then what do you think. And then I believe it's, it's also apparent from the record the child wanted to be with mother father mother father were available, not stepmother, which again, goes back to why the court would submit a right of first refusal and keep it in place and increasing it to 10 hours versus the two hours to reduce the interactions between the parents, and hopefully reduce the conflict. Well, she certainly didn't want to be awakened at 430 in the morning. All right. No, absolutely. I certainly didn't want to be awakened at 430 in the morning to transfer from one parent's home to another. Agreed. And I answered your questions related to the right of first refusal. I believe so. Thank you. I believe the only other arguments on the subject matter jurisdiction was the testimony presented the closing arguments presented in the best interest analysis, going on to whether or not it was a decision on decision making was against the manifest weight of the record on all all relevant matters, nine factors. The appellant is really only arguing that one of those factors was that issue, that being the jails recommendation, which the court also addresses why the court declined to follow that recommendation. The trial court. Did the traffic or the jails recommendation. I mean the, the jail came down with equal parenting time, and you referred to the other recommendation regarding right of first refusal wasn't the track record obligated to give more weight to the jails recommendations. There's no, there's no case all that I can find where the trial court had to give the jails recommendation more weight it the case all supports that a jail jails recommendation is simply that a recommendation reasonable minds can can differ. The jails report brings up issues of parental alienation father and stepmother on possible improper influence of the child on desiring equal parenting time. And the jail goes, not to weigh that heavily whereas the court did weigh that heavily. The jail didn't address in his report. The threats by father to take full custody of the child's mother. The jail. Also seem to give the opinion that because of these parents positions and their intelligence that they should be able to communicate, but the record responsibly with one another related to the child, but the record reflects, that's not the case. And there is no end in sight on that being resolved. When fathers asked at trial. What's your solution on communication. He responded something to the effect of less communication. Mother of leave when asked the same question she asked for communication, she saw it as very one sided. She's texting him on numerous different issues, and she gets next to no response. Additionally, the jail didn't address in his report. The father's frequent changes in not only his residence and employment in his schedule. That that wasn't evaluated by the jail, whereas the court did evaluate that The jail's recommendation was partially based on the child's wishes, but the court noted that there really wasn't a, a basis for the child's wishes meaning that they're okay child wanted equal time but why the child wasn't able to explain that the child's maturity wasn't identified at trial there was no evidence presented on the basis for her wishes or her maturity and express reasons for her wish, and the court could interpret the jails report as being there was improper influence. As one reason why the child. Told the jail that she wanted equal time. And then the court also placed very little weight on the child's wishes itself because of those shortcomings. Going back to the right of first refusal the Helen argues the right of first refusals in court specifically denied to review any factor related to restriction on parenting time because it was not proper. I see no case all cited to support the argument that Placing a right of first refusal is an unreasonable restriction on a parent's time. The jail didn't give an opinion on the right of first refusal in a scenario where it wasn't a 5050 allocation. And there's no reason that the parents also argued that the court didn't provide an analysis for its right of first refusal. Again, the court provided express findings on all best interest factors related to parental responsibility. On the allocation of parenting time. It appears that The court made the trial court made 12 express findings on the best interest factors express findings on 12 of the factors. In reviewing arguments by the appellant. It seems that there's really only two arguments by the appellant that the court did not follow the child's wishes and the court would not follow the jails recommendation. Again, jails recommendation is simply that or it's not obligated to follow it was there would be no point to having a jail, there'd be no point to having hearing if we just rubber stamp any Recommendation a jail submitted On the wishes of the child and I've addressed this to the, to some extent, the trial court identified improper influence of dad and stepmom No maturity, no, no evidence on her maturity or express reasons for wanting equal time and the court way this factor, but did not Didn't put much weight on it, but did say it weighed slightly in favor of equal parenting time being allocated. And then we're back to it would have been factor 17 in the court's order that the court recognized the jails recommendation but declined to follow it when reviewing the parties work schedules. The father having Illinois National Guard obligations living situations mother having a consistent work schedule father moving three times since 2018 and testifying that he may move again. Father's threats of taking full custody away from Caitlin and father's refusal to communicate with mother on basic parenting time issues. In addition to that, father's parental interference that was identified in the jail report and through testimony. There's No suggestion that she heard that the courts. Strike that the courts ruling. The evidence is sufficient to support the court's ruling in this matter. And there's no basis to to over rule the trial court. It would appear that the appellant is trying to replace the jails recommendation for the courts or an alternative to have this court. Put its own judgment in place of the trial courts, which isn't the purpose of this. The power has failed to And the appeal should be denied. I really have nothing further to state, unless there's any other questions. See none. Thank you, counsel. Thank you, Your Honor. Just to address a couple of things that came up in Mr. Reese's argument. In fact, there was some testimony from the jail at the end of trial on page 153 of the transcript. The court asks, or he has asked what opinion do you have regarding a right of first refusal in this case, and he doesn't say none. He says very limited. So basically, in his report, he says no right of first refusal because it's a 5050 suggestion for parenting time. However, at trial, he's asked what his opinion is regarding a right of first refusal. He says very limited. And then he basically goes on to say why, but he was asked the question. He did give an answer and he wasn't impeached at trial. No one cross examined him cross examined him to to find that there was any basis for throwing out his report or that he didn't do a sufficient report. In fact, he did a yeoman's job as a jail, in my opinion, for what that's worth. He's he met with the child and spoke to her on the phone. He met with her at her mom's house at her dad's house in his own office. He met with her multiple times and has pointed out in my brief on behalf of the appellate. The jail is the only and best person to evaluate the child's wishes because the court never met the child. The judge never met the child. She what she didn't testify. There was no in camera of this child. The jail is the only person who could evaluate her. And he evaluated her over and over again and to discount. Well, you were saying discount, but the trial court never disparaged the work that the jail did. He just decided differently or the case came out differently. His decision was different with regard to the matters we've been talking about today than the jail's recommendations. But there was no disparagement of the work that the jail did. That's correct, Your Honor. If you look at Petritis and I apologize, I'm next to the fire station. If you hear a siren, if you read some of the cases were in the court, Petritis and other cases, there was some effort to to impeach the jail. And in this case, there was no impeachment of the jail at all. He gave his testimony. Nobody impeached him. And then the court obviously has the wherewithal and the authority to rule against the jail. But in this instance, with all of the work that the jail did, really, the illumination of what happened in this case came through the jail and rule completely against what the jail recommended in this case is against the manifest weight of the evidence. In light of some of the other testimony that was given in that Caitlin S. refused to also communicate with Corbin B. And she should not reap the benefit of having sole decision making and primary parenting time and what she has when she also and the testimony shows she also refused to communicate and work with Corbin B. So maybe, maybe what the court was looking at and certainly had to look at was the best interest of the child. Of course, not having one parent benefit, and the other one, but have the child benefit from the decision that is made. So that's the job of the trial court to actually look at all the evidence, including the, the jail report and come up with that type of decision, which is what the trial court did here. Right, Your Honor and I agree with you except for back in 2019 the court did the complete opposite thing by also trying to reduce the conflict between the parties and it seems to be going from one extreme to the other. In this instance, and it still isn't reducing the conflict and the child is basically being torn apart by it and I think we can all agree about that but but by awarding mother everything does not stop the, the trauma that goes on to the with this child in the respect that that she and her, her relationship with her father is impaired, and that cannot possibly be in the best interest of a minor child. I would ask the court to reverse and remand to also on the issues of parenting time and the right of first refusal, and to void the order regarding parental decision making as and find that the trial court did not have subject matter jurisdiction to enter into that order. And I think the panel for your time and attention to this case. All right, thank you counsel the court will take this matter under advisement court stands in recess.